UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, and VALENTIN ACUNA, individually and on behalf of other employees similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE PROFESSIONALS, INC., SOUTH EAST PERSONNEL LEASING, INC., and JACOB TWIG, <br><br> Defendants. | |

## COMPLAINT

Plaintiffs Christian Rodriguez and Valentin Acuna (collectively "Plaintiffs"), individually and on behalf of other employees similarly situated (collectively, "Plaintiffs"), complain against Defendants The Professionals, Inc. ("The Professionals"), South East Personnel Leasing, Inc. ("SPLI") and Jacob Twig (Twig"), individually, for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL") and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA").

## INTRODUCTION

1. This case seeks to remedy Defendants' willful and unlawful pay practices that have denied hundreds of Defendants' local movers, foremen, local drivers and estimators their earned wages, including overtime.

2. Defendants The Professionals and Twig previously were sued in this Court by five (5) other local movers, foremen and local drivers for substantially the same unlawful pay

practices as alleged herein, in the case *Elkin Carmona et al. v. The Professionals and Jacob Twig*, Case No. 1:15-cv-8362 (the "*Carmona Lawsuit*").

   3.  The FLSA, IMLW and IWPCA violations complained of in the *Carmona Lawsuit*, and which Defendants in fact committed against their workers (including Plaintiffs), included Defendants' willful failure to pay for work performed at the beginning of each day, for travel time between Defendants' warehouses and the first job site of the day, for travel time between job sites, for travel time from the last job site of the day to the Defendants' warehouses, and for work performed at the end of each day after arrival at the warehouses; as well their failure to pay overtime hours at the rate of one and one-half times the plaintiff's regular hourly rate.

   4.  Upon receipt of service of process of the *Carmona Lawsuit*, The Professionals and Twig required all actively-employed local movers, foremen, and local drivers to sign contracts to discourage and coerce them to not participate in the *Carmona Lawsuit*, and which in fact had the effect of them not joining the lawsuit. Defendants The Professionals and Twig subsequently reached a confidential settlement of the *Carmona Lawsuit* covering only the five named plaintiffs in that lawsuit.

   5.  Thereafter, The Professionals and Twig continued to violate the FLSA, IMWL and IWPCA vis-à-vis the Plaintiffs by their willful failure to pay Plaintiffs as promised for work performed at the beginning of each day, for travel time between Defendants' warehouses and the first job site of the day, for travel time between job sites, for travel time from the last job site of the day and Defendants' warehouses, and for work performed at the end of each day after arrival; and by their willful failure to pay overtime hours at the rate of one and one-half times Plaintiffs' regular hourly wage rate.

6. In 2017, The Professionals and SPLI became joint employers of Plaintiffs and continued to commit the FLSA, IMWL and IWPCA violations described in Paragraph 5.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 29 U.S.C. § 1367.

8. The unlawful employment practices described herein were committed at Defendants' place of business in Chicago, Illinois, in this judicial district. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9. Plaintiff Christian Rodriguez resides and is domiciled in Austin, Texas and worked for Defendants in Chicago, Illinois.

10. Plaintiff Valentin Acuna resides, is domiciled and worked for Defendants in Chicago, Illinois.

11. Within the prior three (3) years, each of the Plaintiffs was an "employee" of Defendants, as defined by the FLSA, 29 U.S.C. § 2039(e)(1) and IMWL, 820 Ill. Comp. Stat. 105/3(d).

12. Within the prior ten (10) years, each of the Plaintiffs was an "employee" of Defendants, as defined by the IWPCA, 820 Ill. Comp. Stat. 115/2.

13. During their employment with Defendants, each Plaintiff has handled goods and equipment including moving equipment, supplies and tools that moved or were intended to move in interstate commerce.

14. Defendant The Professionals is a moving company incorporated in Illinois and doing business within this judicial district. The Professionals operates an office at 3918 N. Western Avenue, Chicago, Illinois, and warehouses at 3400 N. Kedzie Avenue and 3366 N. Kedzie Avenue, Chicago Illinois.

15. Defendant The Professionals is an "enterprise" as defined by the FLSA 29 U.S.C. §203(r)(1), engaged in commerce within the meaning of 29 U.S.C. §203(s)(1)(A).

16. Defendant The Professionals' annual gross sales exceed $500,000.00 in the relevant employment period.

17. Defendant SPLI is an employee leasing company incorporated in multiple states with its primary place of business in Tampa Bay, Florida, and currently does business within this judicial district.

18. Defendant SPLI is an "enterprise" as defined by the FLSA 29 U.S.C. §203(r)(1), engaged in commerce within the meaning of 29 U.S.C. §203(s)(1)(A).

19. Defendant SPLI's annual gross sales exceed $500,000.00 in the relevant employment period.

20. In 2017, Defendant The Professionals requested that Plaintiffs complete documents titled "South East Personnel Leasing, Inc. (SPLI) Employee Leasing Applications" but never told Plaintiffs they were no longer employees of The Professionals.

21. Thereafter, Plaintiffs received their weekly wages in two parts: one, by payroll check from Defendant SPLI and the remainder in cash from Defendants The Professionals and Twig.

4

22.     All three Defendants maintained control over Plaintiffs' working conditions. For example, The Professionals, Twig, and SPLI all had the ability to terminate Plaintiffs' employment.

23.     Prior to the pay arrangement described in Complaint Paragraph 21, Plaintiffs received their weekly wages in two parts, payroll check and cash, from only Defendants The Professionals and Twig.

24.     Defendant Professionals is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 Ill. Comp. Stat. 105/3(c), and the IWPCA, 820 Ill. Comp. Stat. 115/2.

25.     Defendant SPLI is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 Ill. Comp. Stat. 105/3(c), and the IWPCA, 820 Ill. Comp. Stat. 115/2.

26.     Defendants The Professionals and SPLI are joint employers of Plaintiffs.

27.     Defendant Jacob Twig resides and is domiciled in this Judicial District.

28.     Defendant Jacob Twig is owner and President of The Professionals. Among other things, Twig has the authority to, and does, hire and fire employees; direct and supervise the work of employees, and make or participate in decisions regarding employee compensation.

## FACTUAL ALLEGATIONS

29.     The Professionals provides moving services and employs mostly native Spanish-speaking employees.

30.     During their employment, Plaintiffs worked as local movers, foremen, local drivers and estimators transporting customers' personal property on moving vans between various locations around the Chicago area and/or facilitating such moves.

5

31. Plaintiffs are hourly workers who are neither exempt from the minimum wage and overtime provisions of the FLSA and IMWL, nor exempt from the wage provisions of the IWPCA.

32. Defendants do not maintain accurate time records for Plaintiffs and/or any other hourly employees employed in the Chicago area as local movers, foremen, local drivers or estimators.

33. Plaintiff Christian Rodriguez's ("C. Rodriguez") hourly rate was up to $17.00 per hour during the relevant employment period.

34. C. Rodriguez worked as a local mover, foreman, local driver and estimator from June 2014 to June 2018.

35. Plaintiff Valentin Acuna's ("Acuna") hourly wage rate was up to $16.00 per hour during the relevant employment period.

36. Acuna worked as a local mover from February 2013 to January 2018.

**UNPAID OVERTIME**

37. During the three (3) years preceding the filing of this Complaint, Defendants directed each of the Plaintiffs to work, and each of the Plaintiffs did routinely work, in excess of 40 hours per workweek.

38. During the three (3) years preceding the filing of this Complaint, Defendants knew or should have known that Plaintiffs worked in excess of forty (40) hours per workweek.

39. During the three (3) years preceding the filing of this Complaint, Defendants failed to pay Plaintiffs at the rate of one and one-half their regular rate of pay (the "overtime rate") for all hours worked in excess of forty (40) hours per workweek.

40. Defendants routinely and intentionally falsified payroll records to hide their failure to pay wages for hours worked by Plaintiffs in excess of forty (40) hours per workweek at the required overtime rate.

41. Defendants The Professionals and Twig paid Plaintiffs for hours worked more than forty (40) each week in cash and at their regular hourly rate.

42. Plaintiffs' wages were not based on the number of jobs performed or completed, nor based on the quality or efficiency of their performance.

**UNPAID WORK TIME**

43. Defendants failed to pay Plaintiffs at least the minimum wage for all time worked, including work performed at the beginning of each day, travel time between Defendants' warehouses and the first job site of the day, travel time between job sites, travel time from the last job site of the day to Defendants' warehouses, and work performed at the end of each day after Plaintiffs' arrival at the warehouses.

44. Defendants require their employees, including Plaintiffs, to report to The Professionals' warehouse prior to travelling to the job site.

45. While at The Professionals' warehouse the employees, including Plaintiffs, receive their daily job assignments, and often would be required to load materials for their jobs onto the Company's trucks.

46. Defendants do not pay their employees, including Plaintiffs, for the time spent receiving their work assignments and/or loading materials onto The Professionals' trucks.

47. After loading the materials, Defendants' employees, including Plaintiffs, travel together in The Professionals' trucks to their first job site.

48. Defendants do not pay their employees, including Plaintiffs, for travel time on The Professionals' trucks between The Professionals' warehouse and the job site.

49. Defendants' employees, including Plaintiffs, routinely have multiple jobs each day. Defendants do not pay their employees, including Plaintiffs, for the time spent travelling on The Professionals' trucks between job sites.

50. After completing the final job of the day, employees, including Plaintiffs, must travel on The Professionals' trucks from the final job site to The Professionals' warehouse. Defendants do not pay employees, including Plaintiffs, for the time travelling from the final job site to The Professionals' warehouse.

51. Upon arriving at The Professionals' warehouse at the end of the day, employees, including Plaintiffs, are required to unload and clean the Company's trucks. Employees, including Plaintiffs, are prohibited from going home until after the Company's trucks are fully cleaned. Defendants do not pay employees, including Plaintiffs, for the time spent unloading unused materials and cleaning the Company's trucks.

52. Defendants only pay employees, including Plaintiffs, for the time they spend working at the various job sites.

53. During their employment with Defendants, Plaintiffs normally worked at least five (5) days per week and as many as seven (7) days per week. Their typical work day while working for Defendants started at 7:00 am and did not end until after 10:30 pm.

54. The work and travel that Plaintiffs performed, but were not paid for, was compensable because it was integral and indispensable to their principal activities and job functions.

55. Defendants routinely and intentionally falsified the payroll records to hide their failure to pay wages for all hours worked by Plaintiffs.

**DEFENDANTS' KNOWLEDGE OF WRONGDOING**

56. Defendants have posted conspicuously at The Professionals' warehouse posters communicating to employees that Defendants are required by law to comply with the minimum wage and overtime requirements set forth in the FLSA and IMWL. By this communication, Defendants indicated that they knew about their obligations under the law, and promised to pay their employees, including Plaintiffs, all wages to which they were entitled for their labor.

57. In 2017, Defendants distributed to all employees (including Plaintiffs) a form titled "Applicant Acknowledgment," that promised employees that SPLI would pay them their hourly wages and overtime pay if Professionals did not pay SPLI for all services performed by Plaintiffs.

58. In 2017, when Defendants began paying employees by a combination of paychecks from SPLI and cash payments from The Professionals, the *Carmona Lawsuit* was pending in this Court, and consequently SPLI knew or should have known that Defendants were not paying Plaintiffs at least minimum wage for all hours worked and were not paying Plaintiffs the overtime owed to them.

59. Defendants were aware of their obligation to pay non-exempt hourly workers for all the time worked, including payment of at least minimum wage for each hour worked and payment at the overtime rate for hours worked in excess of forty (40) hours per week, and intentionally chose not to pay Plaintiffs accordingly.

60. Defendants acted willfully and in bad faith in failing to properly compensate Plaintiffs for the work they performed.

## COUNT I
### Violations of the Fair Labor Standards Act
### (Collective Action)

61. Plaintiffs re-allege and incorporate Paragraphs 1-60 as though fully set forth herein.

62. Pursuant to 29 U.S.C. § 206, Plaintiffs were entitled to be compensated for each hour worked, at a rate of at least minimum wage for all hours worked.

63. Defendants failed to pay Plaintiffs, and their other local movers, foremen, local drivers, and estimators (collectively "hourly employees"), as described above, for all time worked. Specifically, Defendants failed to pay Plaintiffs and Defendants' other hourly employees for work performed at the beginning of each day, travel time between Defendants' warehouse and the first job site of the day, travel time between job sites, travel time from the last job site of the day to Defendants' warehouse, and work performed at the end of each day after Plaintiffs' arrival at the warehouse. As a result, Defendants failed to pay Plaintiffs at a rate of at least minimum wage for all hours worked during these times.

64. Defendants' failure to pay Plaintiffs and Defendants' other hourly employees, as described above, for each hour worked, at a rate of at least minimum wage, is a violation of the FLSA.

65. Pursuant to 29 U.S.C. § 207, Plaintiffs and Defendants' other hourly employees were entitled to be compensated at the overtime rate for all hours worked in excess of forty (40) per workweek.

66. Defendants failed to pay Plaintiffs and Defendants' other hourly employees at the overtime rate for all hours worked in excess of forty (40) hours per workweek.

67. Defendants' failure to pay Plaintiffs and Defendants' other hourly employees at the applicable overtime rate for all hours worked in excess of forty (40) hours per workweek is a violation of the FLSA.

68. Defendants knew their obligations under the FLSA, but deliberately chose not to heed them. Thus, Defendants' failure to properly compensate Plaintiffs and Defendants' other hourly employees is a willful violation of the FLSA.

69. As a direct and proximate result thereof, there is due to Plaintiffs and the other hourly employees back wages and liquidated damages pursuant to the FLSA.

70. Plaintiffs' experiences are typical of the experiences of the putative class members.

71. For Defendants' other hourly employees to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to all similarly-situated employees, as well as certain additional time for those individuals to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

72. The hourly employees who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Plaintiffs Christian Rodriguez and Valentin Acuna respectfully request that this Court enter judgment in their favor and enter an order as follows:

a) Determining that this action may be maintained as a collective action pursuant to the FLSA.

b) Awarding judgment for back pay equal to the amount of all unpaid compensation due for the three (3) years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

c) Awarding liquidated damages in an amount equal to the amount of unpaid compensation pursuant to 29 U.S.C. § 216(b);

    d)    Awarding prejudgment interest with respect to the amount of unpaid compensation;

    e)    Awarding Plaintiffs their reasonable attorneys' fees and awarding costs incurred in connection with this action; and

    f)    Ordering such other and further relief as the Court deems appropriate and just.

## COUNT II
### Violations of the Illinois Minimum Wage Law
### (Class Action)

73.    Plaintiffs re-allege and incorporate Paragraphs 1-60 as though fully set forth herein.

74.    Pursuant to 820 Ill. Comp. Stat. 105/4(a), Plaintiffs were entitled to be compensated for each hour worked, at a rate of at least minimum wage for all hours worked.

75.    Defendants failed to pay Plaintiffs, as described above, for work performed at the beginning of each day, travel time between Defendants' warehouse and the first job site of the day, travel time between job sites, travel time from the last job site of the day to Defendants' warehouse, and work performed at the end of each day after Plaintiffs' arrival at the warehouse. As a result, Defendants failed to pay Plaintiffs, as described above, at a rate of at least minimum wage for all hours worked during these times.

76.    Defendants' failure to pay Plaintiffs, as described above, for each hour worked, at a rate of at least minimum wage, is a violation of the IMWL.

77.    Pursuant to 820 Ill. Comp. Stat. 105/4a(1), Plaintiffs were entitled to be paid the overtime rate in workweeks where they worked in excess of forty (40) hours during their employment with Defendants.

78. Defendants failed to pay Plaintiffs at the overtime rate for all hours worked in excess of forty (40) hours per workweek.

79. Defendants' failure to pay Plaintiffs at the applicable overtime rate for all hours worked in excess of forty (40) hours per workweek is a violation of the IMWL.

80. Pursuant to 820 Ill. Comp. Stat. 105/12(a), Plaintiffs are entitled to recover unpaid wages earned in the three (3) years prior to the filing of this Complaint, plus statutory damages in the amount of two percent (2%) per month of the amount of underpayments.

81. Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the Plaintiff Class, including all minimum and overtime wages due, statutory damages, prejudgment interest and any other damages due, be resolved.

82. This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Plaintiff Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendants have employed in excess of forty (40) persons who have been subject to Defendants' common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

83. Plaintiffs and other local movers, foremen, local drivers and estimators who worked for Defendants in Illinois are equally affected by Defendants' IMWL violations, and the relief sought is for the benefit of the Plaintiffs named in this lawsuit and the class that Plaintiffs seek to represent.

84. The issues involved in this lawsuit present common questions of law that predominate over the variations which may exist between members of the class, if any.

85. Plaintiffs and the proposed class of other similarly-situated persons on the one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought.

86. Plaintiffs are able to fairly and adequately represent and protect the interests of the class.

87. Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

88. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in a multiplicity of lawsuits and would create hardship to the individuals, the Court and to Defendants. Thus, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

89. The Plaintiff Class members who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Plaintiffs Christian Rodriguez and Valentin Acuna respectfully request that this Court enter judgment in their favor and enter an order as follows:

a) Determining that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

b) Awarding judgment in the amount of back pay equal to the amount of all unpaid compensation due as a result of Defendants' violations of the IMWL;

c) Awarding prejudgment interest on the back wages in accordance with 815 ILL. COMP. STAT. 205/2;

d) Awarding statutory damages pursuant to the formula set forth in 820 ILL. COMP. STAT. 105/12(a);

e) Awarding reasonable attorneys' fees and costs incurred in filing this action; and

f) Ordering such other and further relief as this Court deems appropriate and just.

## COUNT III
### Violations of the Illinois Wage Payment and Collection Act
### (Class Action)

90. Plaintiffs re-allege and incorporate Paragraphs 1-60 as though fully set forth herein.

91. As set forth in the posters that Defendants maintained on display for Plaintiffs information, Defendants promised to pay Plaintiffs for all hours worked and for all overtime hours at the overtime rate as required by law.

92. As set forth in the form titled "Applicant Acknowledgment," Defendants promised employees that SPLI would pay them their "applicable minimum wage (or the legally required overtime pay, at the applicable minimum wage rate, in a workweek in which [they] have worked overtime) for any such pay period" that Professionals did not pay SPLI for services performed by Plaintiffs, as required by law.

93. The Professionals and Twig did not pay SPLI for all services performed by Plaintiffs, thus triggering SPLI's obligation to pay Plaintiffs for such unpaid time.

94. During the course of Plaintiffs' employment, Defendants promised to pay each Plaintiff a certain minimum hourly wage, in all cases in excess of the legally-mandated minimum hourly wage, for all hours worked, but failed to pay Plaintiffs the promised rate for work performed at the beginning of each day, travel time between Defendants' warehouse and the first job site of the day, travel time between job sites, travel time from the last job site of the day to

15

Defendants' warehouse, and work performed at the end of each day after Plaintiffs' arrival at the warehouse.

95. During the course of Plaintiffs' employment, Defendants promised to pay each Plaintiff an overtime rate of one and a half times their regular hourly rate for all time worked over 40 hours in a work week but failed to pay Plaintiffs the promised overtime rate for hours they worked over 40 hours in a workweek.

96. As a result of Defendants' violations of the IWPCA, Plaintiffs have not been paid for all wages owed to them during the ten (10) years preceding the filing of this Complaint.

97. Plaintiffs seek certification of this lawsuit as a class action in order that their rights and those of the Plaintiff Class, including all minimum and overtime wages due, statutory damages, prejudgment interest and any other damages due, be resolved.

98. This action is brought as a class action under Fed. R. Civ. P. 23(b)(3) because the number of individuals who comprise the Plaintiff Class is so numerous that joinder of all Class members is impracticable. While the precise number of members of the Class has not been determined at this time, Plaintiffs believe Defendants have employed in excess of forty (40) persons who have been subject to Defendants' common unlawful pay practices during the statutory three (3) year period preceding the filing of this Complaint.

99. Plaintiffs and other local movers, foremen, local drivers and estimators who worked for Defendants in Illinois are equally affected by Defendants' IMWL violations, and the relief sought is for the benefit of the Plaintiffs named in this lawsuit and the class that Plaintiffs seek to represent.

100. The issues involved in this lawsuit present common questions of law that predominate aver the variations which may exist between members of the class, if any.

101. Plaintiffs and the proposed class of other similarly-situated persons on the one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought.

102. Plaintiffs are able to fairly and adequately represent and protect the interests of the class.

103. Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

104. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in a multiplicity of lawsuits and would create hardship to the individuals, the Court and to Defendants. Thus, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

105. The Plaintiff Class members who are still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

WHEREFORE, Plaintiffs Valentin Acuna and Christian Rodriguez respectfully request that this Court enter judgment in their favor and enter an order as follows:

a) Determining that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b) Awarding judgment in an amount equal to all unpaid wages and benefits owed to Plaintiff pursuant to the IWPCA;

c) Awarding prejudgment interest on the unpaid wages in accordance with 815 Ill. Comp. Stat. 205/2;

d) Awarding statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

e) Awarding reasonable attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a); and

    f)    Ordering such other and further relief as this Court deems appropriate and just.

| | |
|---|---|
| Dated: January 15, 2019 | Respectfully submitted, |
| | |
| Gary Noah Savine #06238023<br>Savine Employment Law, Ltd.<br>150 South Wacker Drive, Suite 2400<br>Chicago, Illinois 60606<br>Tel. (312) 788-2668 | CHRISTIAN RODRIGUEZ and VALENTIN ACUNA, individually and on behalf of other employees similarly situated |
| Marc J. Siegel, #06238100<br>Bradley Manewith, #06280535<br>James Rogers, #6324570<br>Siegel & Dolan, Ltd.<br>150 North Wacker Drive, Suite 3000<br>Chicago, Illinois 60606<br>Tel. (312) 878-3210 | By: /s/ Marc J. Siegel<br>    *One of Plaintiffs' Attorneys* |