## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN RODRIGUEZ, and VALENTIN ACUNA, individually and on behalf of other employees similarly situated, | Case No. 19-cv-00289 |
| Plaintiffs, | Hon. Mary Rowland |
| v. | |
| THE PROFESSIONALS, INC., SOUTH EAST PERSONNEL LEASING, INC., and JACOB TWIG, | |
| Defendants. | |

### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO CURE DEFENDANTS' INTIMIDATION, THREATS AND RETALIATION AGAINST PLAINTIFFS, PUTATIVE CLASS MEMBERS AND THIRD-PARTY WITNESSES

Plaintiffs, by and through their attorneys, SAVINE EMPLOYMENT LAW, LTD. and

SIEGEL AND DOLAN, LTD., for their Motion for Protective Order under Fed. R. Civ. P. 23(d)

to cure Defendants the Professionals, Inc.'s and Jacob Twig's intimidation, threats and retaliation

against Plaintiffs, putative class members and third party witnesses, state as follows:

### INTRODUCTION

Plaintiffs, four former employees of Defendants, brought this case in January 2019 on

behalf of a predominately Hispanic group of local movers, foremen, local drivers and estimators

(collectively "movers") who have worked for Defendants the Professionals, Inc. ("The

Professionals"), South East Personnel Leasing, Inc. ("SPLI") and the Professionals' owner Jacob

Twig ("Twig") (collectively, the "Defendants"), for Defendants' failure to pay earned wages.  As

set forth in their Amended Complaint, Plaintiffs allege that Defendants failed to comply with the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the Illinois Minimum Wage Law

1

("IMWL"), 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act

("IWPCA"), 820 ILCS 115/1, *et seq.* by not paying the movers for all compensable work time,

including pre-/post-liminary work time and travel time, and not paying overtime.  ECF No. 37.

Plaintiffs have brought their FLSA claim as a collective action under §216(b) of the FLSA, and

their IMWL and IWPCA claims as a class action under Fed. R. Civ. P. 23(b)(3).  Id.

On July 14, 2020, Plaintiff Valentin Acuna ("Acuna") was told by Eduardo Martinez

("Martinez"), the owner of Expert Movers, Inc., ("Expert Movers"), that Defendant Twig had

called Martinez demanding that Expert Movers answer The Professionals' and Twig's subpoena

for Acuna's employment records, and that Twig also told Martinez that Twig was ***"going to call***

***the FBI and Immigration to finish this."***  See Declaration of Valentin Acuna, in both English

and Spanish, attached hereto as **Exhibit A**.

Notably, Martinez is not only the owner of Expert Movers; he is also a putative class

member, having worked as a mover for the Professionals with Acuna during the statutory period

relevant to Plaintiffs' FLSA, IMWL and IWPCA claims.  Id.  But Martinez never previously

received notice of this lawsuit because he was one of sixty-three putative class members that

Defendants intentionally omitted from Defendants' disclosures in connection with Plaintiffs' first

round of §216(b) notices to the putative class.  Martinez also employs, through Expert Movers,

other movers who have worked for the Professionals and Twig.  See Acuna Declaration,

**Exhibit A**.

Martinez's report to Acuna of Twig's threat to call Immigration authorities and the FBI

and of Twig's accompanying demand for Acuna's employment records occurred *on the same*

*day* that Plaintiffs filed their pending Motion to Quash Defendants' Subpoena to Expert Movers.

ECF. No. 89.  Martinez's call to Acuna also occurred *at the same time* Twig knew or should

have known that the parties were conferring over the terms of Plaintiffs' forthcoming motion for leave to issue §216(b) notices to the 63 class members (including to Mr. Martinez) who were omitted from the original notice.[1]

Martinez's report of Twig's threat to call Immigration authorities and the FBI also follows closely on the heels of Defendant Professionals' May 1, 2020 filing of a retaliatory lawsuit in Cook County Circuit Court against the Professionals' former Office Manager Ana Hernandez (the "*Hernandez Lawsuit*") for her having provided a declaration in support of Plaintiffs' motion for class certification, and her agreeing to respond to Plaintiffs' subpoena for records in her possession – an action that subsequently chilled Ms. Hernandez's cooperation with the subpoena until the Court granted Plaintiffs motion to compel Hernandez's production on June 23, 2020.  See Complaint in the case *The Professionals Inc. v. Ana Hernandez*, Case 2020 CH 04054, filed May 1, 2020, attached as Exhibit A to ECF. No. 81-1; and Hernandez Declaration, ECF No. 42.[2]  Like Mr. Martinez, Ms. Hernandez owns a moving company that employs movers with whom Acuna worked for the Professionals and Twig.  See Acuna Declaration **Exhibit A**.

---

[1]     Plaintiffs discovered the sixty-three missing putative class members through their review of documents produced by Defendants during the parties' recent mediation.  This occurred nearly *6 months after* Defendants had provided to Plaintiffs the June 6, 2019 class member list on which Plaintiffs relied to issue their 216(b) opt-in notices.  At the time of their discovering the sixty-three missing putative class members, Plaintiffs informed Defendants that Plaintiffs would file a motion to reissue notices to the sixty-three workers – who account for approximately *1/3 of the putative class* -- if mediation concluded without settlement, and Defendants' counsel did not object.  Defendants the Professionals and Twig withdrew from mediation on May 29, 2020.  During the parties' June 23, 2020 hearing on Plaintiffs' separation motion to compel the response to a subpoena directed to Defendants' former office manager Ana Hernandez, Plaintiffs informed the Court verbally of their intention to file the aforementioned 216(b) motion.  The Court requested the parties confer over the motion before Plaintiffs file it.

[2]     As of the date of this motion, Plaintiffs still have not received Ms. Hernandez's production under the June 23, 2020 Order because Defendants Professionals and Twig have insisted that the parties replace the e-discovery vendor named in the Order to facilitate the production, following the vendor's mistaken delivery to Plaintiffs' counsel Gary Savine of a spreadsheet listing deleted files contained in Ms. Hernandez's production ahead of Defendants' opportunity to object to such production.  The parties currently are conferring over modifications to the Court's Order to accommodate the vendor's replacement.  Plaintiffs' counsel has preserved, but not reviewed, the spreadsheet, and has agreed to permanently delete the spreadsheet subject to the modified order.

Martinez's report of Twig's threats also occurs less than two weeks after Defendants' proposed additional counsel Burke, Warren, MacKay and Serritella, P.C. ("Burke Warren") threatened Plaintiffs' counsel that Defendants had retained Burke Warren "to investigate potential claims of aiding and abetting, civil conspiracy, and tortious interference with contract" against counsel for Plaintiffs and counsel for Ms. Hernandez. See ECF No. 85-1, Exhibit B.[3]

Additionally, Defendants The Professionals and Twig previously were sued by five other former movers for substantially the same unlawful pay practices as alleged in this lawsuit (also initially on a collective basis under FLSA §216(b) in the case *Elkin Carmona et al. v. The Professionals and Jacob Twig*, Case No. 1:15-cv-8362 ("the *Carmona Lawsuit"*). See Amended Complaint, ECF. No. 37, ¶4; "*Acuerdo De Confidencialidad*," attached as Ex A to Declaration of Ana Hernandez, ECF No. 42, p. 9. In the context of the *Carmona Lawsuit*, Twig told the movers that "some (expletive) workers" were trying to "fuck him" by suing him for wages, and that everybody needed to sign the agreement to protect the business.[4] See Declaration of Ana Hernandez, Id. at ¶18. The Plaintiffs in the *Carmona Lawsuit* eventually withdrew their motion for §216(b) class certification and the parties reached a confidential settlement covering only the five named plaintiffs. See Amended Complaint, ECF. No. 37, ¶4. According to Hernandez's sworn statement, after the settlement, Defendants the Professionals and Twig continued their unlawful pay practices vis-à-vis the remainder of the workforce. See Declaration of Ana Hernandez, ECF No. 38, at ¶¶ 21-25.

---

[3] Defendants' separate motion for leave for Burke Warren to reappear in this case for the admitted sole purpose of pursuing these threats, and Plaintiffs opposition to Burke Warren's reappearance and request for sanctions, currently are pending before the Court. See ECF Nos. 84, 85, and 85-1

[4] Defendants were represented in the *Carmona Lawsuit* by Burke Warren.

Defendants have now carried out against Plaintiffs (as well as Hernandez) the very threat of retaliation promised during the *Carmona Lawsuit*. By Defendants threatening a putative class member (Martinez) "to call the FBI and Immigration to finish this," while demanding that Martinez disclose Plaintiff Acuna's employment records in contravention of Plaintiffs' pending Motion to Quash Defendants' subpoena for such records; and by Defendants filing a retaliatory lawsuit against third-party witness Hernandez; and by Defendants threating to bring a factually baseless lawsuit against Plaintiffs' counsel (and Hernandez's counsel) – all ahead of Plaintiffs' receipt of evidence from Hernandez and Plaintiffs' issuance of corrective §216(b) notices to Martinez and to rest of the 33% of the putative class Defendants omitted from their original class list (some of whom Hernandez and Martinez likely employ) – Defendants intentionally have stoked fear in the Plaintiffs, putative class members and supporting witnesses, and may have already dissuaded some of them from participating in this case.

## ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure provides that, in the context of a class action, a district court may impose conditions on parties, including limiting communications between representative parties and potential class members. Fed. R. Civ. P.(23)(d)(1)(C). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Comp. v. Bernard, 452 U.S. 89, 100 (1981). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101-02. "Such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as

little as possible, consistent with the rights of the parties under the circumstances." Id. at 102. A court possesses such supervisory authority even before a Rule 23 class is certified. See In re Initial Pub. Offering Sec. Litig, 499 F. Supp. 2d 415, 418 n. 13 (S.D.N.Y. 2007) (citing In Re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005).

Here, Defendants intentionally have intimidated and stoked fear in the Plaintiffs, putative class members and supporting third-party witnesses. The Court should accordingly exercise its authority under Rule 23(d)(1)(C) to cure the coercive effects of Defendants' misconduct and ensure that Plaintiffs, putative class members and third-party witnesses can exercise their rights under the FLSA, including by their participate in this lawsuit. 29 US.C. §201 et seq. See Urtubia v. B.A. Victory Corp., 857 F. Supp. 2d 476, 484-86 (S.D.N.Y. 2012).

In Urtubia, like in this case, the plaintiffs, having brought a putative class and collective action for unpaid wages under the FLSA and New York law, moved the Court pursuant to Rule 23 to order steps to correct the coercive impact on the class of defendants' threat against a putative class member to have him reported to immigration authorities and possibly deported, and the impact of defendants' contemporaneous requests to three putative class members to sign affidavits stating that they were paid for all worked and denying they were owed any wages. In granting the plaintiffs' motion for a Rule 23 protective order, the Court noted:

> "Defendants' workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in this litigation. The Court further finds that the evidence proffered by Plaintiff regarding the would-be co-plaintiff is sufficiently suggestive of actual interference by Defendants with the rights of potential class members to receive advice and consider whether to assert claims. These circumstances are sufficiently fraught with potential for abuse to warrant a carefully tailored, limited restriction on Defendants' right to communicate directly with current and former employees who are potential class members regarding this litigation and its subject matter (i.e., whether Defendants have complied and

6

are in compliance with federal and state compensation payment requirements)."

Id. at 484.  Accordingly, to cure the chilling effect on plaintiffs' and other class members' FLSA rights, of defendants' threat of deportation and heavy-handed affidavit requests, the Court issued an injunction prohibiting the defendants from (a) retaliating, or threatening retaliation, directly or indirectly, against any potential class member for considering or asserting claims regarding defendants' compliance with wage and hours laws; and (b) communicating with any potential class member regarding this lawsuit and its subject matter other than through the class member's counsel absent prior permission from the Court.  The Court also ordered the defendants to produce all written communications with potential class members covering a period corresponding to defendants' alleged misconduct, concerning defendants' compliance with wage and hour laws, including but not limited to the above-referenced affidavits.  Id. at 485-86.  Cf. Villareal v. El Chile, Inc., 266 F.R.D. 207, 214 (N.D. Ill. 2010) (Granting plaintiffs in FLSA and class action protective order barring defendants from taking discovery about plaintiff's immigration status; "[A] number of courts have recognized that allowing discovery of a plaintiff's immigration status would have an in terrorem effect likely to deter FLSA claims"); Nieves v. OPA, Inc., 948 F. Supp. 2d 887 (N.D. Ill. 2013) ("[A]llowing … discovery [into immigration status] could have a pronounced chilling effect with respect to parties filing FLSA claims because aggrieved parties would not file otherwise valid claims due to the fear of potential deportation if their employer could use discovery to determine their true status and then report it to the [INS].") (citing Flores v. Amigan, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002 (stating that allowing discovery into immigrations status would create the "danger of intimidation, the danger of destroying the cause of action, and would inhibit plaintiffs in pursuing their rights" because would fear deportation if they pursue their rights)); (Pizano v. Big

Top Party Rentals, LLC, 2018 US Dist. LEXIS 81184 at *19 (N.D. Ill. 2018) ("Given that undocumented workers are entitled to protections under the FLSA, the immigration status of any employee that opts in to the lawsuit is irrelevant and not discoverable in claims under the FLSA.").

Defendants the Professionals and Twig, like the defendants in Urtubia, similarly have threatened putative plaintiffs with reports to "immigration and the FBI," and also previously forced movers to sign documents (confidentiality agreements titled *Acuerdo De Confidencialidad*") that Twig explained to workers by telling them movers "some (expletive) workers" were trying to "fuck him" by suing him for wages, and that everybody needed to sign the agreement to protect the business.  See Declaration of Ana Hernandez, Id. at ¶18.  But the Professionals' and Twig's campaign of coercion to punish and chill the protected conduct of Plaintiffs, putative class members and supportive third-party witnesses goes much farther, to also include (a) a tying of the threatened immigration/FBI calls to a demand that the putative class member disclose Plaintiff Acuna's employment records (in contravention of Plaintiffs' pending motion to quash Defendants' subpoena for such records), (b) a retaliatory lawsuit against a witness Ms. Hernandez, and (c) threats of baseless claims against the lawyers representing the Plaintiffs and Ms. Hernandez – while at the same time withholding from Plaintiffs the names of a third of the putative class (including the putative class member to whom Defendant Twig relayed his threat of contacting the FBI and Immigration) and depriving those putative class members §216(b) notice.  For these reasons, the Court should take even more dramatic steps to correct the corrosive effect of Defendants' extended campaign of coercion and intimidation to protect class members and to fairly conduct this action.

**CONCLUSION**

Wherefore, for the reasons outlined herein, Plaintiffs' respectfully request that this Honorable Court:[5]

(1) Order an injunction prohibiting Defendants from retaliating, or threatening retaliation, directly or indirectly, against Plaintiffs and any putative or potential class member for considering or asserting claims regarding Defendants' compliance with wage and hour laws, or against any third-party witness, including but not limited to (1) reporting, or threatening to report, such individuals or anyone associated with them to any immigration or law enforcement authority; (2) suing or threatening to sue, or disciplining or threatening to discipline, any such individuals for violating the *Acuerdo De Confidencialidad* or any similar agreement;

(2) Order an injunction prohibiting Defendants from communicating with Plaintiffs or any putative or potential class members regarding this lawsuit and its subject matter other than through Plaintiff's counsel, absent prior permission from the Court;

(3) Order Defendants to produce all written communications with putative and potential class members at any time from October 1, 2018 (when Plaintiffs' counsel first notified Defendants of the claims underlying this lawsuit) to the present, concerning Defendants' compliance with wage and hour laws or legal claims against Defendants relating to such compliance, including but not limited to communications relating to this lawsuit, or to the *Hernandez Lawsuit*;

(4) Granting Plaintiffs leave to send a notice, written in a form approved by the Court, to all

---

[5] Plaintiffs reserve the right to request, and will request, additional corrective steps to address Defendants unlawful acts of witness intimidation and retaliation in connection with their forthcoming Motion for Leave to Re-Issue Notice Pursuant to §216(b) of the FLSA.

putative class members and other employees of Defendants alerting them to the terms of the

Court's Order in connection with this motion; and

(5) Grant Plaintiffs any additional relief the Court deems just and proper.

Dated: July 20, 2020                    Respectfully submitted,

Gary Noah Savine #06238023              CHRISTIAN RODRIGUEZ and
Savine Employment Law, Ltd.             VALENTIN ACUNA, individually and on
150 South Wacker Drive, Suite 2400      behalf of other employees similarly
Chicago, Illinois 60606                 situated,
Tel. (312) 788-2668

                                        By: /s/ Gary Noah Savine
Marc Siegel, #06238100                    *One of Plaintiffs' Attorneys*
Bradley Manewith, #06280535
James D. Rogers, #06324570
Siegel & Dolan Ltd.
150 North Wacker Drive, Suite 3000
Chicago, IL 60606
Tel. (312) 878-3210

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2020, a true and accurate copy of the foregoing Motion was filed via this Court's CM/ECF system and served upon all parties of record.


<u>/s/ Gary Noah Savine</u>
*One of Plaintiffs' Attorneys*